**MPH IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **T.W. an Individual,** | : | |
| Plaintiff(s), | : | **Case No. 2:26-cv-00479-ALM-KAJ** |
| v. | : | **Judge ALGENON L MARBLEY** |
| **G6 HOSPITALITY, LLC., *et al.*,** | : | **Magistrate Judge KIMBERLY A. JOLSON** |
| Defendant(s). | : | |

**ORDER GOVERNING DISCOVERY OF ESI**

The parties to the above-captioned Action (the "Parties," and each, a "Party") stipulate and agree that the following specifications shall govern discovery of all physical documents, electronically stored information, and any other materials and information, if any, produced by the parties during discovery in the above-captioned action.

## I. DEFINITIONS

The following definitions apply to this Order Regarding Discovery of Electronically Stored Information ("ESI Order").

1. "Action" means the above-captioned matter.

2. "Custodian" means the individual or originating source from which Documents or ESI will be collected and reviewed.

3. "Document" and "Electronically Stored Information" ("ESI") is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

4. "Native Format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

5. "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, or usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

6. "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File will also contain data relevant to the individual Documents, including extracted and user- created Metadata, as well as OCR or Extracted Text, should such data be available.

7. "OCR" means optical character recognition technology which is created by software used in conjunction with a scanner that is capable of reading text-based paper/hard copy documents and making such documents searchable using appropriate software.

8. "Extracted Text" means the text extracted from a native document, and includes all header, footer, and document body information, including any hidden content, when available. A "Text File" is a file containing the full multi-page text of native or near-native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

9. “Media” means an object or device, including but not limited to, a disc, tape, computer, or other device, on which data is or was stored.

10. “Parties” collectively shall mean all named parties to any action in these Proceedings, including any Party added or joined to any complaint in these Proceedings, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

11. “Predictive Coding/Technology Assisted Review” shall mean processes for prioritizing or coding a collection of documents using computerized systems, such as machine- learning algorithms, that may rely on the judgments of one or more attorneys experienced in the subject matter of a litigation regarding the responsiveness of a subset of documents and extrapolates those judgments to the remaining document collection. For purposes of this Protocol, Predictive Coding/Technology Assisted Review is synonymous with computer-assisted review, computer-aided review, and content-based advanced analytics or other terms used to refer to search methodologies that rely on machine-based learning to identify responsive documents.

12. “Production” or “Produced” includes any exchange of Documents or Electronically Stored Information between the Parties, whether voluntarily or in response to a formal or informal request.

13. “Search Term” means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI and includes strings of words and phrases joined by proximity and Boolean connectors.

14. “Search Criteria” includes date ranges and file types.

15. “Static Image” means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (“TIFF”) image is an example of a Static Image. “TIFF”

refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

16. "Structured Data" means ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database.

17. "Unstructured Data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations, Email, and image files.

## II. GENERAL

A. The Parties shall take reasonable steps to comply with the procedures laid out in this ESI Order. The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this ESI Order. If compliance with this ESI Order imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in good faith in an effort to resolve the issue.

B. The purpose of this Order is to facilitate the exchange of physical documents and ESI in an efficient manner and in accordance with the Federal Rules of Civil Procedure ("Federal Rules"). By stipulating to this Order and agreeing to produce documents, generally, in a particular form or form, except as specifically set forth herein, this Order does not:

1. Alter or affect the applicability of the Federal Rules or any Local Rules of the U.S. District Courts ("Local Rules"), as applicable;
2. Enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Court's orders;

3. Address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced;

4. Imply that discovery produced under the terms of this ESI Order is properly relevant, discoverable, or admissible in this or in any other litigation; or

5. Alter or affect the objections of discovery applicable under the Federal Rules, and no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

C. If reasonably possible, the production of physical documents and ESI shall be conducted to maximize efficient and quick access and minimize related discovery costs. The terms of this ESI Order shall be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules, the Local Rules, and any orders that have been entered by this Court in this case.

D. All documents that are produced in this Action shall be produced in the manner provided herein, provided however, that the Parties may agree to other forms of production for all or part of the documents produced. Nothing in this ESI Order shall be interpreted to require disclosure of physical documents, ESI or other materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this ESI Order shall be deemed to waive or limit any Party's right to object to the production of certain physical documents or ESI, or to move for an appropriate order on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is no good cause for the documents/production. Nothing in this ESI Order shall be deemed to limit, modify, or override

any provision of the confidentiality order entered in this case to govern production of confidential information.

## III. IDENTIFICATION OF RESPONSIVE ESI

Consistent with their obligations under the applicable Federal Rules and Local Rules, the Parties will attempt to resolve, in person, in writing (including email), or by telephone, disputes regarding the issues set forth herein before filing a motion with the Court or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good-faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

## IV. PRODUCTION OF PHYSICAL DOCUMENTS AS STATIC IMAGES

Documents that exist solely in physical hard-copy format shall be scanned and produced in color where the original hard-copy document exists in color and shall also be scanned and produced as either (a) single-page, Group IV, 300 DPI TIFF images or (b) single-page JPEG images, with an Opticon image Load File using ANSI/Western European encoding ("OPT file") and a delimited database Load File ("DAT file"). The DAT file should contain the fields listed in Exhibit A. Hard copy documents should be physically unitized. The Parties reserve the right to allocate costs of color scanning if it becomes burdensome, and any such requests are subject to the boundaries of proportionality.

If the Producing Party performs optical character recognition ("OCR") on a document for its own benefit, the document-level OCR text should be produced as an accompanying plain text file named after the bates number in the "BEGNO" field of the DAT. To the extent OCR plain text files are produced, the Producing Party is not certifying that the accompanying text file is accurate or reliable for searching purposes beyond the application of the underlying OCR technology.

## V. PRODUCTION FORMAT FOR ESI

A. **General**: All ESI should be produced as single-page, Group IV, 300 DPI TIFF in black and white.

B. **Native Production**: The following file types shall be produced in native format unless they are redacted in image format: (i) audio, (ii) video, (iii) databases, (iv) spreadsheet-type files (*e.g.*, Microsoft Excel, Corel Quattro, *etc*.), (v), computer slide presentations, including PowerPoint, Google Slides, Keynote slides *etc*.; (vi) JPEGs; and (vii) multimedia files (*e.g.*, GIFs, animations or combination of text, sound and/or motion video). All native files shall be processed to show and reveal all color, comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application.

1. Documents produced in native format should be named according to the Bates number assigned, with the confidentiality designation appended to the Bates numbers with a hyphen. Native documents should be linked directly to their corresponding records in the DAT file using the NATIVELINK field.

2. Single-page Bates-stamped TIFF image slip-sheets will be included for each document produced in native format. The slip-sheets will display the Bates number of the native file, the Confidentiality endorsement, and an endorsement stating “File Produced Natively.” If documents requested in native format require redactions, the parties should ensure that proper formatting and usability are maintained. The requesting party will identify to the Producing Party redacted documents whose formatting or usability

has been unreasonably degraded, and the parties will meet and confer to agree on reasonable modifications to the production format.

C. **Redactions**: As set forth in the Protective Order, the Producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege, protection or immunity, including any Protected Health Information (PHI) unrelated to Plaintiff, information protected by the Health Insurance Portability and Accountability Act (HIPAA) unrelated to Plaintiff, sensitive or private information (*i.e.*, credit card numbers, bank account numbers, cell phone numbers, employee usernames or passwords, social security numbers, home addresses, etc.) as well the same information related to non-parties. Should the need arise for additional redactions, the Parties will meet and confer on the appropriateness of a given redaction. The Producing Party shall identify redactions clearly on the face of any TIFF image, either with "Redacted" or the redaction reason on the face of the Document if space allows (*e.g.*, Privilege, Privacy, etc.).

D. **Technical Issues**: If a document which would otherwise be produced in TIFF format cannot be imaged for technical reasons, it may also be produced in native format as described above, in which case the slip-sheets will display the Bates number of the native file and an endorsement stating "Document Unable To Be Imaged."

E. **Color**: Documents containing color need not be produced in color in the first instance, provided that the Producing Party shall retain a copy of produced hard copy documents in color. The Producing Party will honor reasonable requests for a color image of a document, if production in color is necessary to understand the meaning or content of the document. The Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of

the need for production in color format. The Producing Party shall not unreasonably deny such requests. The Parties reserve the right to allocate costs of color productions if they become burdensome, and any such requests are subject to the boundaries of proportionality.

F. **Metadata**: All ESI should be produced with a DAT file that contains the metadata fields listed in **Schedule A** annexed hereto, to the extent captured at the time of the collection. Metadata should not be removed from any document produced in native format.

1. To the extent that metadata does not exist or is not reasonably accessible or available for any documents produced, nothing in this ESI Order shall require any Party to create, extract, capture, collect or produce such metadata.

2. An accompanying OPT file should also be provided for all TIFF images. TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of email messages should include the BCC line, and TIFF images of MS Word documents should show all tracked changes and comment.

G. **Text Files**: For all ESI produced, an accompanying document level text file containing either the Extracted Text or OCR text from the document should be produced. The file path and file name of the plain text file should be included in the "TEXTLINK" field of the DAT file.

H. **Parent-Child Relationships**: Due to the contextual relationship of ESI, the Parties will maintain family relationships for electronic data. The Parties agree that if any part of a document or its attachments is responsive, the entire document and attachments must be produced,

except any attachments that must be withheld or redacted on the basis of any privilege or work-product or other protection. However, in an effort to avoid unnecessary expense and burden, the Parties agree that completely non-responsive documents attached to a responsive document may be produced as a single-page Bates-stamped TIFF image slip-sheet stating the document has been withheld as non-responsive and slip sheet metadata produced as identified in Schedule A. When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data Load File and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

## VI. PRODUCTION FORMAT FOR STRUCTURED DATA

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the parties will meet and confer to address the most appropriate and cost-effective production format for the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application, which may include running a report or a database export. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format. If the Parties cannot reach agreement, the requesting party will make a motion to compel the information.

## VII. PRODUCTION FORMAT FOR MEDIA

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission. The production media shall be labeled with the Volume Number along with the Bates Number

range(s) of the materials, date of delivery, and where not practicable to do so, may be provided in an accompanying letter. If a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Any document production that may contain material subject to the Protective Order shall be produced in encrypted form and the production media shall be labeled accordingly. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the production.

**VIII. PROCESSING SPECIFICATIONS**

A. **Time Zone:** All Parties will identify the time zone in which its data is processed as reflected in the metadata.

B. **Global or Horizontal Deduplication**: All Parties shall make reasonable efforts to de-duplicate ESI. ESI produced shall be globally de-duplicated across all collected custodial and non-custodial sources. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. The initial custodian of a document should be listed in both the CUSTODIAN and ALL CUSTODIANS fields and subsequent custodians' deduplicated copies of the document should be listed in the ALL CUSTODIANS field, with each custodian name separated by a semicolon.

C. **Email Thread Suppression**: A party may produce a single copy of a responsive document insofar as no non-duplicative information is lost as a result. For emails with attachments,

the hash value is generated based on the parent/child document grouping. A party may also de-duplicate email threads as follows: in an email thread, only the last-in-time portion of the thread that is relevant needs to be produced if all previous emails in the thread are contained within the final message(s). Where an email is not last-in-time and contains an attachment, that email and its attachment shall be considered for production.

D. **System Files**: Each Party will "de-NIST" system and application files unless they are determined by the Producing Party to be responsive.

## IX. BATES NUMBERS

Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

## X. IDENTIFICATION AND COLLECTION OF DOCUMENTS

Except as otherwise agreed upon in this ESI Order, the Parties will meet and confer periodically regarding the scope of discovery, prioritizing collection and production efforts, methods of ESI collection, including agreements on (i) custodians and business records, (ii) data sources, including joint data sources managed or accessed by multiple employees, (iii) search terms, (iv) email addresses or domains, and (v) date restrictions by matter or custodian, and memorialize in writing any agreements reached. As part of these discussions, Counsel for the respective Defendants will disclose to Plaintiffs the Custodians most likely to possess responsive ESI and hard copy documents.

## XI. TECHNOLOGY-ASSISTED REVIEW

The parties may use technology assisted review ("TAR").

## XII. EXCLUDED FILE TYPES

Absent a particularized need and good cause showing, the circumstances of this case do not warrant the preservation, collection, review, or production of ESI from the sources noted below because they are either not reasonably accessible or it is anticipated that enough relevant information can be yielded from accessible sources and, as necessary and appropriate, supplemented with deposition discovery. The following ESI does not require preservation, collection, review or production:

1. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by specialized computer forensics tools and methods.

2. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

3. Online access data such as temporary Internet files, history, cache, cookies and the like.

4. Data stored on photocopiers, scanners, and fax machines.

5. Data in metadata fields that are frequently updated automatically, such as last accessed dates, last printed dates, and last saved dates, so long as at the time the data is collected for inclusion on Schedule "A" nothing is done to scrub, remove or alter in any way the data from the native files.

6. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

7. Server, system, or network logs.

8. Data remaining from systems no longer in use that is unintelligible on the systems in use.

9. Email, calendars, and contact data sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices) that are duplicative of data that are more accessible elsewhere.

Nothing herein shall prevent a Party from subsequently requesting that ESI or other Documents identified above be preserved and produced if specific facts demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval.

**XIII. PRIVILEGE AND PRIVILEGE LOGS**

A. **Privilege Log**: A Party that withholds documents, ESI, and any other materials and information on the grounds of attorney-client privilege, attorney work product, and/or any other applicable privilege, immunity or protection from discovery, shall produce a privilege log. The privilege log shall list the specific privilege or privileges asserted regarding each withheld document and describe the document with sufficient particularity to allow the receiving Party to assess the claim of privilege but without revealing privileged information. The privilege log shall, to the extent available, include the date the document was prepared, the person or persons who prepared the document, and the person or persons to whom the document was addressed, directly and by carbon copy or blind copy. The privilege log shall indicate whether any identified sender or recipient of the document was acting in the capacity of attorney for the Party. The privilege log shall include the subject and or title of the document without revealing privileged or protected information.

1. **Materials Not Required to be Logged**. The following documents presumptively need not be included on a privilege log:

a. Privileged communications exclusively between a Party and its counsel and/or staff or agents of counsel related to representation in this case where no other party or third party is also included in the communication.

b. Privileged communications exclusively involving outside counsel, where no Parties to this action or any third party is included, copied, or blind-copied.

c. Work product created by in-house or outside counsel, or by an agent of in-house or undersigned counsel for this litigation.

d. Non-substantive embedded files in privileged documents (*i.e.*, images, logos, etc.).

2. **Logging Email Threads**. For purposes of creation of a privilege log, a Party need include only one entry on the log to identify withheld privileged emails that constitute an uninterrupted dialogue between or among individuals; provided, however, that disclosure must be made that the emails are part of an uninterrupted privileged dialogue.

3. **Time for Serving Privilege Log**. Privilege logs shall be produced in accordance with the Federal Rules of Civil Procedure and any applicable local rules and procedures.

B. **Reservation on Privilege Logs.** The Parties reserve their rights to revisit the date after which documents need not be included on a privilege log and may modify the agreed upon date(s) by mutual agreement. The Parties further agree to meet-and-confer regarding any proposed additional categories of documents that presumptively need not be logged.

**XIV. THIRD PARTY DOCUMENTS**

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this ESI Order with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein. Nothing in this ESI Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

**XV. GOOD FAITH**

A. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this ESI Order. If a Producing Party cannot comply with any material aspect of this ESI Order, such Party shall inform the Requesting Party as to why compliance with the ESI Order was unreasonable or not possible within 15 days after so learning. No Party may seek relief from the Court concerning compliance with the ESI Order unless it has conferred with other affected Parties to the action.

B. Parties agree to identify the documents by including the Bates number of the first page of the document at issue so long as the document was produced by the parties in this litigation through discovery obtained in this litigation. Nothing in this paragraph is meant to preclude the parties from otherwise using documents which were not necessarily produced as a result of discovery in this litigation.

**DONE** and **ORDERED** on this 19th day of October, 2026.

s/Kimberly A. Jolson

UNITED STATES MAGISTRATE JUDGE

SCHEDULE A

| *Field* | *Data Type* | *Paper* | *Native Files & Email Attachments* | *Email* |
|---|---|---|---|---|
| BegDoc | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| EndDoc | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| BegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| EndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| DupCustodian | Text – paragraph Separate entries with “;” | | All names of people the document was collected from even if removed from production as a duplicate | All names of people the document was collected from even if removed from production as a duplicate |
| Folder | Text | | File path/folder structure for the original native file as it existed at the time of collection | File path/folder structure for the original native file as it existed at the time of collection. Should include full path and folder locations of email container files such as PST and NSF and the internal path of the email within those files |
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph Separate entries with “;” | | | Recipients of message |
| CC | Text – paragraph Separate entries with “;” | | | Copied recipients |
| BCC | Text – paragraph Separate entries with “;” | | | Blind copied recipients |
| Subject | Text - paragraph | | | Subject of message |
| DateSent | Date (mm/dd/yyyy) | | | Date message sent |
| TimeSent | Time (hh:mm:ss) | | | Time message sent |
| DateReceived | Date (mm/dd/yyyy) | | | Date message received |
| TimeRecv | Time (hh:mm:ss) | | | Time message received |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |
| DateCreated | Date/Time (mm/dd/yyyy) | | Date file was created | |
| DateModified | Date/Time (mm/dd/yyyy) | | Date file was last modified | |
| Title | Text - paragraph | | Title from document metadata | |

| | | | | |
|---|---|---|---|---|
| Author | Text - paragraph | | Document author from metadata | |
| Company | Text - paragraph | | Document company or organization from metadata | |
| FileHash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| NativeLink | Text - paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |
| Confidentiality | Single choice | Designation branded onto the document | Designation branded onto the document | Designation branded onto the document |
| Source | Text – paragraph | | Physical location, computer or server from which the data was collected | Physical location, computer or server from which the data was collected |
| Type of Redaction | Text multiple choices (attorney/client; work product etc) | | | Text multiple choices (attorney/client; work product etc) |
| Last Accessed Date | Date (mm/dd/yyyy) | | Last date file was accessed | Last date file was accessed |
| Last Saved Date | Date (mm/dd/yyyy) | | Last Date saved | Last date saved |
| Last Printed | Date (mm/dd/yyyy) | | Last Date printed | Last date printed |
| Slip-Sheet reason | Text – multiple choices filed, privilege, non-responsive, etc. | Text – multiple choices filed, privilege, non-responsive, etc. | Text – multiple choices filed, privilege, non- responsive, etc. | Text – multiple choices filed, privilege, non-responsive, etc. |